***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Griffin. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. An employee-employer relationship existed on employee's date of alleged injury, April 19, 2004.
4. Plaintiff-employee had an average weekly wage of $328.86, yielding a compensation rate of $219.25.
5. The Pre-Trial Agreement, a packet of medical records, and a packet of Industrial Commission Forms were admitted into evidence as Stipulated Exhibit Number 1.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on June 3, 1982 and was 23 years old at the time of the hearing before the deputy commissioner. Following his high school graduation, plaintiff worked in the field of carpentry, including carpentry work for J.P. Weaver and Richard Honeycutt Construction.
2. Plaintiff began working with defendant-employer on March 1, 2004 as a cabinet sander and mantle builder. Defendant-employer is in the custom cabinetry business and builds custom bookcases, custom cabinets, and mantles. Defendant-employer installs the cabinets as well.
3. In August 2001, plaintiff sustained injuries to his low back and ribs while employed with College Court Apartments. A golf cart accidentally ran into plaintiff from behind and pinned him in his desk chair between the desk and the golf cart. Plaintiff sought medical *Page 3 
treatment two to three times immediately following this accident. No further medical treatment was needed and plaintiff continued to work in the carpentry field without any problems.
4. For approximately three weeks prior to April 19, 2004, plaintiff suffered from a stomach virus, which caused some pain, vomiting, and diarrhea. Plaintiff was unable to work on April 13 and April 14, 2004 due to his stomach virus. His symptoms were usually aggravated by food consumption.
5. On April 19, 2004, plaintiff began work without any pain or symptoms of his stomach virus. On that date, he was sanding and installing hardware on a set of maple trim bookcases. Plaintiff worked all morning through his lunch break without developing any stomach pain or other symptoms.
6. Following his lunch break, plaintiff began to load the bookcase he was sanding onto a trailer for delivery to the job site. The bookcase was approximately eight feet tall by two and a half feet wide, weighing between 50 and 60 pounds. While loading the bookcases, plaintiff felt the immediate onset of a sharp pain from the lower back around to his upper side. Plaintiff assumed it was his stomach virus flaring up because he had just eaten lunch about 45 minutes earlier. However, the pain he experienced was different from his usual nagging stomach virus pain. He described the pain as being "like an electrical shock-type pain" that ran back and forth. Despite the pain, plaintiff continued to work his full day. He did not report his pain to his supervisors or other co-employees.
7. It is the company policy of defendant-employer that two employees should lift every cabinet. For safety reasons, employees are discouraged from lifting heavy items without assistance. Stomach straps and other types of safety equipment are also available to assist employees with lifting. *Page 4 
8. When plaintiff left work on April 19, 2005, he testified that the pain ran from his right lower back to the right upper front side. Due to the continued pain, plaintiff sought medical treatment from the emergency room that same evening. Plaintiff and his fiancé remained in the waiting area for approximately two hours until hospital staff took plaintiff's vital statistics and basic information. Due to the extended waiting period, plaintiff left without an examination by a physician.
9. Later that same evening, the pain worsened and his aunt, an EMT worker, took plaintiff to the emergency room by ambulance. After examination by a physician, plaintiff was released with prescription pain medication, instructions to ice the area and return the following day for a gall bladder ultrasound.
10. The next few days following his emergency room visit, plaintiff reported to defendant-employer that he was unable to work due to problems with his gall bladder. At this point, plaintiff was under the impression that his pain and symptoms were related to his gall bladder. Plaintiff's grandmother provided defendant-employer with copies of Dr. Caldwell's notes excusing plaintiff from work.
11. On April 22, 2004, Chad Caldwell, M.D., examined plaintiff and discussed the results of the gall bladder ultrasound. Dr. Caldwell noted plaintiff's gall bladder was normal and diagnosed a possible abdominal strain. Plaintiff continued treating with Dr. Caldwell, who wrote him out of work until May 24, 2004. Based on his examination and plaintiff's increased complaints of pain in the back and right flank region, Dr. Caldwell referred plaintiff for an MRI and evaluation by an orthopaedic surgeon, Dr. Appert. At this time, Dr. Caldwell suggested that perhaps plaintiff injured himself at work. Based on this information, plaintiff submitted a handwritten note to defendant-employer on or about May 6, 2004 requesting their workers' *Page 5 
compensation policy information. In the note, plaintiff reported that his physician now felt his problems were work-related. This note was defendant-employer's first notice of plaintiff's alleged April 19, 2004 lifting incident.
12. At the end of May 2004, plaintiff's appointment with the orthopaedic referral, Dr. Appert, was canceled because the workers' compensation carrier denied payment. At this time, plaintiff's stomach virus was no longer an issue. His right side pain had subsided, but he had lower back pain described as "a constant stabbing pain." His pain was similar to what he felt on April 19, 2004. Plaintiff also experienced periodic pain radiating down his right leg into the hamstrings, stopping at the knee.
13. Without health insurance, plaintiff was unable to seek further treatment for his medical condition until November 8, 2004. North Carolina Vocational Rehabilitation scheduled an orthopaedic evaluation for plaintiff with Ira Hardy, M.D. At the initial visit, the physician's assistant, William S. Payne, PA-C, examined plaintiff who reported feeling pain in his back, which radiated to his right side while loading trucks at work on April 19, 2004. Plaintiff learned for the first time that the MRI results revealed a herniated disc around L4-L5. A series of lumbar epidural injections were prescribed to treat plaintiff conservatively.
14. On January 31, 2005, plaintiff reported diffuse pain in his back that radiated into both of his legs, with greater pain in the right leg. It was also noted that two lumbar epidural injections provided little relief for plaintiff's symptoms. Arrangements were made for plaintiff to have a standing lumbar myleogram and post contrast CT scan.
15. On March 4, 2004, Dr. Hardy reviewed the results of the diagnostic testing with plaintiff. The myleogram revealed a defect at the L4-L5 disk effacing nerve roots on both sides, but more on the right. The post contrast CT scan confirmed a right L5-S1 disk bulge with a *Page 6 
small protruded or extruded disk fragment attached to the right S1 nerve root. Additionally, plaintiff has an L4-L5 midline protruded disk which is more prominent on the left than right. Based on the results of the diagnostic testing, Dr. Hardy recommended surgical repair of both the L4-L5 and L5-S1 problems.
16. As of the date of the hearing, plaintiff has not undergone any of the recommended surgeries to relieve his continuing low back pain. Plaintiff has not returned to work for defendant-employer or any other employer since the April 19, 2004 injury.
17. The burden is on plaintiff to establish his back condition is related to the April 19, 2004 lifting incident. Dr. Hardy opined and the undersigned finds, that the L5-S1 disk protrusion is unrelated to plaintiff's April 19, 2004 lifting incident. With regards to plaintiff's L4-L5 condition, the medical evidence presented is insufficient to establish a causal connection between plaintiff's back condition and the April 19, 2004 lifting incident. Dr. Hardy testified plaintiff's April 19, 2004 lifting incident could have been the cause of the L4-L5 protrusion. He also testified that any type of trauma could have caused plaintiff's back condition.
18. The medical evidence presented by plaintiff is insufficient to support plaintiff's burden of proving causation. The testimony of Dr. Hardy is based on speculation and is not sufficient to prove medical causation. Accordingly, plaintiff has failed to prove that his back condition is related to the alleged lifting accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following: *Page 7 
 CONCLUSIONS OF LAW
1. "In a workers' compensation claim the employee has the burden of proving that his claim is compensable." Holley v. ACTS, Inc.,357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003). In many instances, the facts in evidence are such that any layman of average intelligence would know what caused a person's injuries; however, the exact nature and cause of some injuries must be established by expert opinion evidence. Click v.Freight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). To establish causation, the evidence must rise above the level of mere speculation and conjecture. Holley, 357 N.C. at 232, 581 S.E. 2d at 752.
2. As the testimony of plaintiff's treating physician was that the April 19, 2004 lifting incident could have caused his back condition, plaintiff has not established a causal link between his alleged lifting incident and his back condition and is entitled to no compensation under the Workers' Compensation Act. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 ORDER
1. Plaintiff's claim for benefits under the Act is hereby DENIED.
2. Each side shall bear its own costs.
This the 7th day of March, 2006.
 S/_____________ BUCK LATTIMORE CHAIRMAN *Page 8 
CONCURRING IN RESULT ONLY:
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING WITHOUT WRITTEN OPINION:
 S/______________ THOMAS J. BOLCH COMMISSIONER *Page 1